Filed 1/5/22  In re A.H. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | B310939 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>D.H.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 20CCJP00688 |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Commissioner. Reversed in part.

Leslie A. Berry, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

The juvenile court exercised jurisdiction over A.H. and B.H., the children of M.H. (mother)[1] and D.H. (father), under Welfare and Institutions Code[2] section 300, subdivisions (a) and (b). The juvenile court found the children were at substantial risk of serious physical harm due to their parents' history of domestic violence and mother's abuse of alcohol.

The juvenile court removed the children from their parents and ordered father to participate in individual counseling, parenting classes, a domestic violence program, a psychological evaluation if his therapist deemed it appropriate, and weekly and random drug testing. It further ordered that if father had any unexcused missed tests, the Department of Children and Family Services (Department) could request an order requiring him to participate in a full drug treatment program with further testing, and that if father had any "dirty" tests, he would be required to participate in a full drug treatment program with further testing.

On appeal, father solely challenges the portions of the dispositional order regarding his participation in drug testing and a full drug treatment program. He argues that because the record does not reflect his medicinal use of marijuana presented any risk of harm to the children, affected their well-being, or was related in any way to the reasons they were declared dependents of the court, the juvenile court erred by requiring his participation in those services. We agree with his argument and reverse the challenged portions of the dispositional order.

---

[1]     Mother is not a party to this appeal.

[2]     All further undesignated statutory references are to the Welfare and Institutions Code.

## BACKGROUND

Mother and father are the parents of two children, A.H. and B.H. At the time this case was initiated, A.H. was 14 years old and B.H. was 10 years old. Since moving from Texas to California in 2017, the family has resided in a hotel room located in Wilmington.

The family came to the Department's attention in January 2020, when it received a referral alleging the children were being neglected by mother and emotionally abused by father. The reporting party stated the parents were involved in "ongoing domestic violence" and "engage in physical altercations in the presence of the children." The reporting party further related that three months prior, there was an incident in which "father slammed mother against a wall and mother collapsed to the floor[,]" where she "was unconscious for 'ten minutes or so.'"

Following an investigation, on February 4, 2020, the Department filed a petition on the children's behalf under section 300, subdivisions (a) and (b). The petition alleged the children were at risk of serious physical harm due to: (1) ongoing domestic violence between the parents in their presence (counts a-1 and b- 1); and (2) father's abuse of marijuana, which "render[ed] [him] incapable of providing regular care and supervision of the children[,]" and mother's failure to protect them from father's marijuana abuse (count b-2).

On March 16, 2020, the Department filed its first amended petition. In addition to reasserting the counts initially pled, the amended petition alleged the children were at risk of serious physical harm due to mother's abuse of alcohol and father's failure to protect them from her alcohol abuse (count b-3). It further alleged the parents placed A.H. "at risk of developmental

and emotional harm and damage[ ]" because they "failed to enroll [A.H.] in school for three years and failed to ensure she received a proper education or provide access to education" (count b-4).

At the adjudication hearing held on August 18, 2020, father testified on his own behalf. After hearing his testimony and argument from counsel, the juvenile court sustained the first amended petition as pled, declared the children dependents of the court under section 300, subdivisions (a) and (b), and removed them from their parents under section 361, subdivision (c)(1). The court ordered father to participate in a 52-week domestic violence program, parenting classes, individual counseling, and a psychological assessment if his therapist deemed it appropriate. It also ordered father to participate in weekly and random drug testing, and "admonish[ed] . . . father that his marijuana levels are to go down and out." Moreover, the court ordered that "if any test is missed or dirty," father must complete a full drug treatment program with additional testing.

On August 27, 2020, father filed an application for rehearing from the jurisdictional and dispositional findings under section 252.[3] In support, father argued the juvenile court erred by

---

3      Section 252 provides, in relevant part: "At any time prior to the expiration of 10 days after service of a written copy of the order and findings of a referee, a minor or his or her parent or guardian or, in cases brought pursuant to Section 300, the county welfare department may apply to the juvenile court for a rehearing. That application may be directed to all or to any specified part of the order or findings, and shall contain a statement of the reasons the rehearing is requested. If all of the proceedings before the referee have been taken down by an official reporter, the judge of the juvenile court may, after reading

sustaining counts b-2 and b-4. On September 16, 2020, the application was granted with respect to the adjudication of counts b-2 and b-4.

Rehearing took place on November 30, 2020. There, the Honorable Craig S. Barnes found that based on the evidence, father's use of marijuana "seem[ed] to be consistent with the legal use of cannabis[,]" and that he did not appear to use it "in a way that seemed to be inappropriate, or putting the children at substantial risk of harm." He therefore dismissed count b-2. Judge Barnes also dismissed count b-4, finding the Department did not "me[e]t its burden on that score." A new disposition hearing before the commissioner who presided over the initial adjudication hearing was set for January 11, 2021.

Following a continuance, the disposition hearing was held on February 1, 2021. There, the juvenile court again declared the children dependents of the court under section 300 and removed them from both parents under section 361, subdivision (c)(1). The court ordered father to participate in individual counseling, parenting classes, a domestic violence program, a psychological assessment if recommended by his therapist, and weekly and random drug testing. The court further ordered that "[i]f . . . father tests dirty[,] he will need to enroll in a substance abuse program and continue to test[,]" and that [i]f . . . father has any unexcused missed tests[,] [the Department] may walk the matter on to possibly request a drug program for . . . father[.]"

Father timely appealed.

_____

the transcript of those proceedings, grant or deny the application."

5

## DISCUSSION

### I.    Governing Principles and Standard of Review

In general, "[a]t the dispositional hearing, the juvenile court must order child welfare services for the minor and the minor's parents to facilitate reunification of the family. [Citations.] The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with its discretion. [Citations.]" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) "Of course, the juvenile court's discretion in fashioning reunification orders is not unfettered. Its orders must be 'reasonable' and 'designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.' [Citation.] 'The reunification plan "'must be appropriate for each family and be based on the unique facts relating to that family.'" [Citation.]' [Citation.]" (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1229.)

Where a parent's substance abuse is concerned, "[t]he juvenile court has authority to require a parent to submit to substance abuse treatment as part of a reunification plan as long as the treatment is designed to address a problem that prevents the child's safe return to parental custody." (*In re Nolan W.*, *supra*, 45 Cal.4th at p. 1229.) "[W]hen a parent accepts [reunification] services, and when substance abuse treatment is reasonably related to the minor's welfare, the juvenile court has authority to order the parent to participate. [Citations.]" (*Ibid.*)

"We review the juvenile court's disposition orders for an abuse of discretion[.] [Citation.]" (*In re K.T.* (2020) 49 Cal.App.5th 20, 25; *In re Christopher H.*, *supra*, 50 Cal.App.5th at p. 1006.)

6

We note that despite the well-settled principles above governing the applicable standard of review, father contends we should review the challenged portions of the juvenile court's dispositional order de novo. In support of his position, however, he has not cited any pertinent legal authority. Accordingly, we conclude father has forfeited his contention on this point (see *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [appellate courts may treat an argument as forfeited "[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority[ ]"]), and apply the abuse of discretion standard in addressing his challenge to the dispositional order.

## II.    Analysis

Father's sole contention on appeal is that the juvenile court erred by requiring him to participate in weekly and random drug testing, permitting the Department to request his enrollment in a full drug treatment program and further testing if he had any unexcused missed tests, and requiring him to participate in a full drug treatment program and further testing if he had a "dirty" test. In support, he contends the record reflects his legal, medicinal use of marijuana was unrelated to the grounds upon which the juvenile court exercised jurisdiction, did not place the children at risk of harm, and did not otherwise affect their well-being. As discussed below, we agree with his argument.

A.H. and B.H. separately discussed father's marijuana use during interviews with a Department social worker in March 2020. A.H. related father smokes marijuana outside once or twice per week, that she has seen him smoke, and that he has told her he smokes marijuana. She related his marijuana use "'helps

7

him[ ] [and] makes him feel better.'" According to A.H., father "'acts the same[ ]'" when he smokes marijuana. Similarly, B.H. related father uses marijuana outside, and although she has not seen him do so, she "can smell [the scent of marijuana] every other day." B.H. stated father "'acts normal[ ]'" when he uses marijuana.

At the initial adjudication hearing, father testified about his marijuana use. He stated he began using marijuana in 2017 "because [he] had to take some medicine for cancer . . . that cause[d] his body to spasm and [his] muscles to contract when [he was] sleeping[.]" Father testified he used marijuana "[j]ust before [he went] to bed" to "help [him ]. . . sleep better." He "always smoke[d]" in a room at the hotel that was separate from his family's residence and "never smoke[d] around [his] children." He stated that because he worked evenings and went to sleep in the early morning, the children were "usually asleep[ ]" in their hotel room and were in mother's care when he smoked. Father related he "always ke[pt] [the marijuana] on [him] in [his] pocket in [his] jeans[,]" and that he "never le[ft] it out for [the children] to see or to get."

The evidence discussed above is the only evidence in the record pertaining to father's marijuana use. In short, the record reflects father smoked marijuana for medicinal purposes outside the children's presence, and that his marijuana use did not affect his behavior toward them. The evidence does not demonstrate father's marijuana use facilitated, or was otherwise related to, his domestic violence issues with mother, mother's alcohol abuse, his failure to protect the children from mother's alcohol abuse, the parents' failure to enroll A.H. in school upon arrival in California, their reported failure to provide the children with sufficient food,

8

or their reported failure to ensure the children were seen by dental and medical professionals as needed.[4] Thus, the record does not establish father's marijuana use placed A.H. or B.H. at risk of harm, was related to the grounds upon which the court exercised jurisdiction over the children, or otherwise affected their well-being. Nor does the record demonstrate his marijuana use pertained to any of the "problem[s] . . . prevent[ing] the child[ren]'s safe return to parental custody[ ]" identified by the Department. (*In re Nolan W., supra,* 45 Cal.4th at p. 1229.)

Additionally, the record does not demonstrate use or abuse of other drugs caused or contributed to father's domestic violence or neglect of the children's needs. At the initial adjudication hearing, father testified he did not use any other drugs. We acknowledge that in February 2020, father was arrested after mother contacted the police to report an incident of domestic violence, and the police "discovered an off-white substance resembling crystal [m]ethamphetamine in [his] . . . right jean coin pocket[ ]" while conducting their post-arrest search. The record, however, does not contain any evidence establishing the substance was subsequently tested or otherwise confirmed to be

---

4    In January 2020, B.H. told the Department mother refused to take her to the dentist even though B.H. told her that she had a toothache and was in pain. She also stated that since moving to California, her parents refused to take her to the doctor, even when she said she was not feeling well. B.H. further related that sometimes the family did not have enough food. In its jurisdiction/disposition report, the Department identified the parents' failure to ensure the children had food and received proper medical care as concerns underlying its recommendation for the children's removal, in addition to the concerns reflected in the first amended petition.

methamphetamine. Nor does the record contain any evidence indicating father used methamphetamine on or around the date of his arrest, or at any other time, including when he had the children in his custody. Further, the children were not residing with their parents on the date of father's arrest, as they were detained from them and temporarily placed in foster care on January 31, 2020.

Accordingly, for the reasons discussed above, we conclude the existing evidence does not demonstrate father's participation in weekly and random drug testing and/or a full drug treatment program is "'designed to eliminate those conditions that led to the court's finding that the [children are] . . . person[s] described by Section 300[,]'" "is designed to address a problem that prevents the child[ren's] safe return to parental custody[,]" or "reasonably related to the [children's] welfare[.]" (*In re Nolan W.*, *supra*, 45 Cal.5th at p. 1229.) The juvenile court therefore abused its discretion when it ordered him to participate in those services.

## DISPOSITION

The portions of the dispositional order requiring father to participate in weekly and random drug and alcohol testing, permitting the Department to request an order requiring father's participation in a full drug treatment program with further testing in the event of an unexcused missed test, and requiring father to participate in a full treatment program with further testing in the event of a "dirty" test, are reversed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

MICON, J.*

---

*        Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11